THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BRAEDEN THORUP, <br><br> Plaintiff, <br><br> v. <br><br> BITBOX INTERNATIONAL, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DISMISSING PLAINTIFF'S [14] MOTION FOR DEFAULT JUDGMENT AND [15] MOTION FOR ATTORNEY FEES** <br><br> Case No. 1:24-cv-00056-DBB <br><br> District Judge David Barlow |

Before the court is Plaintiff Braeden Thorup's ("Mr. Thorup") Motion for Default Judgment.[1] For the reasons stated below, the court dismisses Mr. Thorup's motion.

### BACKGROUND

Defendant Bitbox International, Inc. ("Bitbox") operates and sells Bitcoin ATMs.[2] Bitbox is organized under Florida law and headquartered in Jupiter, Florida.[3] It uses a franchise model, where investors purchase Bitbox branded Bitcoin ATMs.[4] Mr. Thorup, a Utah resident, was connected to Bitbox through a broker as a potential franchise investor in June 2022.[5]

Between June 13, 2022, and September 28, 2022, Mr. Thorup and Bitbox discussed investment opportunities.[6] Bitbox claimed that Bitcoin ATMs were a "turn key business" and Bitbox would handle all set-up, installation, location contracting, machine compliance, and

---

[1] Motion for Default Judgment ("Motion"), ECF No. 14, filed Aug. 20, 2024.
[2] Complaint ¶ 5, ECF No. 1, filed April 1, 2024.
[3] *Id.* at ¶ 2.
[4] *Id.* at ¶ 6.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 12.

1

marketing.[7] Bitbox also claimed it would provide the machine's cryptocurrency funding. Bitbox stated that all franchise investors had to do after making their initial investment was log in to their Bitbox account, view how much money their machines were making, and transfer funds to themselves from time to time.[8] On September 28, 2022, Mr. Thorup and Bitbox entered into an Investment Contract (the "Agreement"), under which Bitbox agreed to provide four Bitbox ATMs in exchange for Mr. Thorup's investment of $104,799.[9]

Problems with the Agreement emerged soon after. Bitbox did not install the ATMs at locations in Florida until December 2022.[10] Mr. Thorup claims all four machines were defective and would go offline for extended periods of time.[11] Although Mr. Thorup notified Bitbox of these issues, Bitbox did not repair the ATMs.[12] Then, in July 2023, Bitbox informed Mr. Thorup that he would need to fund, monitor, and maintain the machines.[13] Mr. Thorup claims the Bitcoin ATMs remain unfunded and inoperable.[14]

Mr. Thorup filed his Complaint on April 1, 2024, bringing three contract claims, three tort claims, and two Utah state law claims.[15] Bitbox was served on June 6, 2024.[16] On June 28, 2024, Mr. Thorup filed a Motion for Default Certificate, as Bitbox had failed to answer his complaint or otherwise appear.[17] The clerk of court entered a Default Certificate on July 5, 2024.[18] Mr.

---

[7] *Id.* at ¶¶ 17–19.
[8] *Id.* at ¶ 28.
[9] *Id.* at ¶¶ 32–37.
[10] *Id.* at ¶ 44.
[11] *Id.* at ¶¶ 45–46.
[12] *Id.* at ¶¶ 47–49.
[13] *Id.* at ¶¶ 50–52.
[14] *Id.* at ¶ 57.
[15] *Id.* at 13–20.
[16] Summons served on Bitbox International Inc., ECF No. 10, filed June 7, 2024.
[17] Motion for Default Certificate, ECF No. 11, filed June 28, 2024.
[18] Default Certificate, ECF No. 12, filed July 5, 2024.

Thorup then filed his Motion for Default Judgment and Motion for Attorney Fees on August 20, 2024.[19]

## STANDARD

"An answer generally must be served twenty days after service of the summons and complaint."[20] "If a party fails to answer or otherwise defend, a default may be entered against the party."[21] Under Federal Rule of Civil Procedure 55(a), the clerk of court must enter a party's default when they have "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."[22] Then, the plaintiff "must apply to the court for a default judgment" unless the plaintiff seeks a sum certain or a sum "made certain by computation."[23] The court accepts all well-pleaded factual allegations in the complaint as true in evaluating Mr. Thorup's motion.[24]

## DISCUSSION

"[W]hen entry of default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[25] "Personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered."[26] "The plaintiff has the burden of establishing personal jurisdiction."[27] "In reviewing its personal jurisdiction, the court does not assert a

---

[19] Motion for Attorney Fees, ECF No. 15, filed Aug. 20, 2024.
[20] *Guttman v. Silverberg*, 167 F. App'x 1, 3 (10th Cir. 2005) (unpublished) (citing Fed. R. Civ. P. 12(a)(1)(A)).
[21] *Id.* (citing Fed. R. Civ. P. 55(a)).
[22] Fed. R. Civ. P. 55(a).
[23] Fed. R. Civ. P. 55(b).
[24] *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) ("After a default judgment is handed down, a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts.") (citation omitted).
[25] *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).
[26] *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (citing *Hukill v. Oklahoma Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008)).
[27] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (citations omitted).

personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."[28]

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[29] "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court."[30] Utah's long-arm statute extends jurisdiction "to the fullest extent" permitted by the Due Process Clause of the Fourteenth Amendment.[31] The "personal jurisdiction analysis here is thus a single due process inquiry."[32]

"Due process requires both that the defendant purposefully established minimum contacts with the forum State and that the assertion of personal jurisdiction would comport with fair play and substantial justice."[33] "Personal jurisdiction can be acquired through either general or specific jurisdiction."[34] Mr. Thorup does not allege that Bitbox is subject to general jurisdiction in Utah, but claims it contacted him while he resided in Utah.[35] Therefore, the court evaluates whether Bitbox's contacts with Utah give rise to specific jurisdiction.

"Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state."[36] "Specific

---

[28] *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).
[29] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).
[30] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citations omitted).
[31] Utah Code Ann. § 78B-3-201 (3).
[32] *Old Republic*, 877 F.3d at 903 (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)).
[33] *Id.* (internal quotations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) (also quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945)).
[34] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011)).
[35] Complaint ¶¶ 9–14.
[36] *Old Republic*, 877 F.3d at 904 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).

jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[37] Bitbox has not appeared in this case, therefore, the court assess only whether it has the requisite minimum contacts with Utah to support specific jurisdiction.

"[T]he 'minimum contacts' test for specific jurisdiction encompasses two distinct requirements: 'first, that the out-of-state defendant must have purposefully directed its activities at residents of the forum state, and second, that the plaintiff's injuries must arise out of defendant's forum-related activities."[38] Purposeful direction may be established "when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state."[39] The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."[40]

The Tenth Circuit recognizes three frameworks "for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with the forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects")."[41] Mr. Thorup's claims is assessed under the harmful effects framework, as he has not alleged a continuing relationship between Bitbox and Utah residents or exploitation of the Utah

---

[37] *Id.* (quoting *Burger King*, 471 U.S. at 476–77).
[38] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (additional citations omitted)).
[39] *Id.* at 907 (italics omitted).
[40] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted).
[41] *Old Republic*, 877 F.3d at 905.

5

market. The court first evaluates Mr. Thorup's contract claims under the harmful effects framework, then turns to his tort claims.

"Although contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction."[42] "In contract cases. . . [the court] sometimes ask[s] whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state."[43] The "bare fact" that Bitbox "entered into a legal relationship" with a Utah resident, "cannot establish sufficient contacts to satisfy the purposeful direction requirement."[44] To determine whether Bitbox is subject to the court's jurisdiction due to its contract with Mr. Thorup, it must evaluate "(a) the parties' prior negotiations, (b) their contemplated future consequences, (c) the terms of their contract, and (d) the parties' actual course of dealing."[45]

Mr. Thorup claims that he had approximately ten phone calls and exchanged more than fifty emails with Bitbox while he was in Utah.[46] But allegations that the parties communicated does not establish purposeful direction.[47] Mr. Thorup states that he was first contacted by Bitbox on June 13, 2022, and entered into the Agreement on September 28, 2022.[48] This four-month

---

[42] *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) (citations omitted) (three comprehended contracts were insufficient to show purposeful direction because each contract was isolated and "without any long-term or continuing obligations involving [the forum state].")
[43] *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1282 (10th Cir. 2016) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)) (holding that personal jurisdiction was lacking because "there is nothing to suggest that [forum state] had any particular role in the structure of the parties' relationship. . . in the alleged actions [Defendant] took to breach its contractual obligations.")
[44] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 910 (10th Cir. 2017).
[45] *Id.* at 910 (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).
[46] Complaint ¶¶ 12–14.
[47] *Dental Dynamics*, 946 F.3d at 1231 (the allegation that the parties "exchanged text messages many times" did not establish purposeful direction) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988)).
[48] Complaint ¶¶ 6, 17.

communication period alone does not establish that Bitbox can be brought into an out-of-state court. These communications are closer to one-off negotiations that don't support jurisdiction than the years-long relationships between contracting parties that allow courts to exercise jurisdiction over out-of-state defendants.[49] Therefore, the prior negotiations between the parties do not establish personal jurisdiction over Bitbox.

Next, the established future consequences of the contract do not support jurisdiction. Under the Agreement, Mr. Thorup agreed to purchase Bitcoin ATMs that are located in Florida and operated by a Florida company. The future consequences of the Agreement are concentrated in Florida, not in Utah. Mr. Thorup alleges he would receive his share of profits from the Bitcoin ATMs, which he would presumably transfer to himself in Utah.[50] But the unilateral activity of one party does not establish jurisdiction.[51] Mr. Thorup could be in Utah or any other forum when he transferred these funds—his location when receiving payments alone cannot justify jurisdiction in Utah.

Evaluating the terms of the contract and the parties' actual course of dealing also leads to the conclusion that this court lacks jurisdiction over Bitbox. Mr. Thorup has not provided the court with a copy of the Agreement to evaluate whether its terms reveal sufficient contacts with

---

[49] *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287–1288 (10th Cir. 2007) ("An individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. But 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'") (quoting *Burger King*, 471 U.S. at 473); *see also Dental Dynamics*, 946 F.3d 1230 (business relationship of three transactions in nine years, with one contract negotiated over email, was insufficient to show purposeful direction); *cf. AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) ("continuous course of dealing" between parties, including business relationship that lasted for over seven years, subjected out-of-state defendant to forum state jurisdiction).
[50] Complaint ¶ 19.
[51] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904–05 (10th Cir. 2017) (holding that "unilateral activity of another party" and "[m]ere foreseeability of causing injury in another state is insufficient to establish purposeful direction.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

7

Utah, however, as alleged, the contract does not support jurisdiction over Bitbox. Mr. Thorup asserts that Bitbox is a Florida company that engaged in the Agreement from Florida.[52] The Bitcoin ATM's Mr. Thorup paid for are in Florida.[53] The only connection with Utah, Mr. Thorup's residence in the state, is insufficient to establish jurisdiction. Accordingly, the court lacks jurisdiction over Bitbox on the contract claims.

Next, to establish purposeful direction through harmful effects for Mr. Thorup's tort claims, Bitbox must have taken "(a) an intentional action. . . that was (b) expressly aimed at the forum state. . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[54] Mr. Thorup alleges that Bitbox knew he was located in Utah and knew it was making false statements about the Bitcoin ATMs.[55] He alleges two intentional actions by Bitbox that may have been aimed at Utah: emailing and calling him. Neither of these actions give rise to personal jurisdiction in this court.

"Although email is directed to particular recipients, email addresses typically do not reveal anything about the geographic location of the addressee. Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived."[56] Mr. Thorup has not claimed that Bitbox knew his physical address, therefore, emails alone cannot establish an action expressly aimed at Utah.[57]

---

[52] Complaint ¶¶ 2, 9–16.
[53] *Id.* at ¶ 44.
[54] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (discussing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).
[55] Complaint ¶¶ 14–16.
[56] *Shrader v. Biddinger*, 633 F.3d 1235, 1247–48 (10th Cir. 2011) (citations omitted).
[57] *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1310 (10th Cir. 2024) (emails to Utah residents could establish express aim at Utah because defendant company that sent emails maintained database of recipient's

Mr. Thorup alleges that Bitbox knew he was in Utah because it called his phone, which has a Utah area code.[58] But these calls reflect Mr. Thorup's ties to Utah, not Bitbox's.[59] Although Bitbox communicated with Mr. Thorup while he was in Utah, these phone calls do not connect Bitbox to Utah. Mr. Thorup could have been anywhere while communicating with Bitbox, and his Utah area code does not show Bitbox intentionally aimed its conduct at Utah. Furthermore, Mr. Thorup has not shown that Bitbox knew the brunt of the injury would be felt in Utah. The Bitcoin ATM's Mr. Thorup purchased are in Florida and should be serviced by a Florida company. Based on these facts, it seems the brunt of the injury would be felt in Florida, not Utah. Accordingly, the court lacks jurisdiction over Bitbox on Mr. Thorup's tort claims.

The facts as alleged in the complaint do not show that Bitbox purposefully directed its activities at Utah residents. Therefore, the court lacks personal jurisdiction and cannot enter default judgment for Mr. Thorup. The court also lacks jurisdiction over Plaintiff's Motion for Attorney Fees.[60]

---

physical address tied to email address); *cf. XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (emails sent to Utah residents did not establish jurisdiction because "specific jurisdiction is proper over a sender only if plaintiff shows that the sender had knowledge that the offending emails were going to a specific State.")
[58] Complaint ¶ 14.
[59] *See Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021) (solicitations to Colorado resident with Vermont phone number could support jurisdiction in Colorado because defendant was a nationwide telemarketer and defendant's call to plaintiff was identical to activity that defendant directed to Colorado residents); *cf. Chan v. UBS AG*, No. LACV1804211JAKFFMX, 2019 WL 6825747, at *8 (C.D. Cal. 2019) (calls by defendant to solicit plaintiff's business at phone number with California area code reflected "at most" plaintiff's ties to the forum, not defendant's, and could not add a basis for jurisdiction).
[60] ECF No. 15.

## ORDER

For the reasons stated above, Plaintiff's Motions are DISMISSED without prejudice for lack of personal jurisdiction.[61]

Signed January 13, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[61] ECF No. 14, ECF No. 15.